Mark M. Bettilyon (4798)
Mica McKinney (12163)
RAY QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
mbettilyon@rqn.com
mmckinney@rqn.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SWIG HOLDINGS LLC,<br>a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SODALICIOUS, INC., a Utah corporation,<br><br>Defendant. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br>Case No. 2:15-cv-00307-DAK<br><br>Honorable Dale A. Kimball |

## COMPLAINS

Plaintiff, Swig Holding LLC by and through its attorneys of record, hereby complains against Defendant Sodalicious, Inc. and alleges as follows.

## PARTIES

1. Plaintiff Swig Holdings LLC ("Swig") is a Utah entity with its principle place of business at 50 East 100 South, Suite 301, St. George, Utah, 84765.

2. Upon information and belief, Defendant Sodalicious, Inc. ("Sodalicious" or "Defendant") is a Utah based entity with its principle place of business at 30 West 300 North,

Provo, Utah, 84601.  Sodalicious also recently opened a second location at The Village, in Provo, Utah.

## JURISDICTION

3. This Court has jurisdiction over the subject matter and the parties under Section 39 of the Lanham Act, 15 USC §1121, and 28 USC §1331 and 1338.

4. Pursuant to 28 USC §1367, this Court has supplemental jurisdiction over the State law claim asserted and because this claim is so related to claims in this action within the Court's original jurisdiction that they form part of same case or controversy.

5. Upon information and belief, Sodalicious is registered to do business in Utah and is subject to personal jurisdiction in this Court.

6. Further, the injuries complained of occurred in this district forming another basis for jurisdiction.

7. Venue is proper in this district pursuant to 28 USC §1391(b) because Swig and Sodalicious both reside in this district and a substantial portion of the events giving rise to the claims stated herein have occurred in this district.

## SWIG'S MARKS AND PRODUCTS

8. Swig is in the business of providing unique food and beverage goods and services to customers at its eight locations throughout Utah.

9. Swig opened its first location in St. George, Utah in 2010.  Since opening its first location, Swig has become hugely successful and widely known for its unique and distinctive drinks, décor, beverage and food offerings.

10. Swig's unique business model includes selling beverages and a limited number of

dessert options at conveniently located drive-thru locations.  The beverages sold by Swig include soda drinks, energy drinks, frappes, Italian sodas, fruit smoothies and other related beverages.

11.     Swig offers its customers a unique and varied beverage experience by including a wide variety of flavor variations.  For example, since at least 2010, Swig has sold and served unique, distinctive and immediately recognizable drinks, which Swig calls "Dirty" sodas or beverages that combine fountain soda and other beverages with smaller amounts of syrups ("flavor shots"), fruit purees ("puree shots"), concentrates, or powders.

12.     Swig's signature and most popular Dirty sodas combine fountain soda, such as Dr. Pepper or Diet Coke, with a small amount of syrup or fruit puree.  These unique drinks are widely known and recognized as Swig's "Dirty" soda and are often called Swig's Dirty Coke, Dirty Diet Coke and Dirty Dr. Pepper.

13.     Swig owns U.S. Trademark Registration No. 4,611,070 for the trademark "Dirty" and common law rights associated with the word "Dirty" (hereinafter the "Dirty Mark").  Swig uses the Dirty Mark as a source identifier with respect to its beverage products as noted above. A copy of the Dirty Mark is attached as Exhibit A.

14.     Swig owns State Certificate of Trademark No. 9393291-0190 on a stylized version of the Swig logo and related common law rights (hereinafter the "Swig Logo Mark").  A copy of the Swig Logo Mark is attached as Exhibit B.

15.     Additionally, since 2010 Swig has continuously used a unique and readily identifiable combination of features that consumers have come to recognize as Swig trade dress. Among other things, Swig's trade dress includes depictions of Soda Bubbles ("Soda Bubbles") in various sizes, which are utilized as a backdrop on Swig menus and signage.

16. Swig's trade dress also includes white menu boards ("Menu Boards") with blue borders and accent colors of red and yellow.

17. Swig's white menu boards are draped against a purple background which contains depictions of Soda Bubbles, as noted above.

18. Swig's trade dress also includes predominately white Styrofoam cups ("Swig Cups") with brightly colored, larger diameter straws. Swig Cups are filled with high quality pebble ice and the soda or beverage selected by the consumer.

19. Since 2010, Swig has also sold a variety of dessert items which it calls "Treats" on its menu. Swig's signature "Treat" is a large sugar cookie (the "Swig Cookie") that is served in a unique way in that it is served semi-frozen with room temperature pink frosting. The Swig Cookie sold semi-frozen with pink frosting has come to be recognized by consumers as one of Swig's unique product offerings.

20. Swig's unique Soda Bubbles, Menu Boards, Swig Cup and Swig Cookie are all Swig Trade Dress (collectively referred to herein as the "Swig Trade Dress"). Swig has made significant investments of time and money to build, advertise, promote and otherwise cultivate the goodwill in the Swig Trade Dress.

21. As a result of the care and skills exercised by Swig, the conduct of its business and the high quality of the products and services which it offers, the unique nature of the Dirty Mark, the Swig Logo Mark and the Swig Trade Dress and the extensive advertising, selling and promotion of Swig's products, the Swig Trade Dress, the Dirty Mark and the Swig Logo Mark (collectively the "Swig Marks") are either inherently distinctive or have acquired strong secondary meaning.

22. The Swig Marks identify Swig's products as those of Swig exclusively and distinguish Swig products from those of its competitors. The distinctive Swig Marks are widely recognized and well-known to customers and symbolize the goodwill that Swig has created by offering these products to consumers.

### DEFENDANT'S INFRINGEMENT

23. Long after Swig developed the Swig Marks and related goodwill identified above, Defendant opened a location in Provo that is a near exact knock off of Swig's business concept. Defendant sells soda drinks and other drinks with flavor shots and purees shots and, on information and belief, Defendant purchases its flavoring offerings from the same manufacturers as those utilized by Swig. Defendant also sells its products at the exact same prices that Swig, until recently, charged its customers, thus making it clear that Defendant is nothing more than a copy of Swig's exact business model.

24. Defendant also utilizes the Swig Marks in selling and promoting its products. Among other things, Defendant:

    a. Uses the Dirty Mark and calls certain drink offerings "Dirty" and "Extra Dirty."

    b. Utilizes an oval nearly identical to Swig's Logo Mark on its signage and on its cups. Defendant's oval also depicts Swig's Soda Bubbles and, like the Swig Logo Mark, contains Defendant's brand name inside the oval.

    c. Depicts Soda Bubbles on its Menu Boards, oval shaped signage and elsewhere in a manner nearly identical to that used by Swig.

    d. Utilizes other protectable elements of Swig's Menu Boards. Defendant's

5

menu boards, like those of Swig, are white, with a blue border. Defendant also uses red print and red and blue accent colors and Soda Bubbles similar to those utilized by Swig on its Menu Boards, on its Swig Logo Mark and elsewhere in Swig's decor.

e. Calls its dessert offerings "Treats" and sells virtually the same treats as Swig sells, including Swig's signature Swig Cookie. Defendant's sugar cookie, like the Swig Cookie, is sold semi-frozen with room temperature pink frosting. In fact, Swig is informed and believes that Defendant purchases its cookie from Swig's prior supplier – a company located in Southern Utah, far removed from Defendant's only location in Provo, Utah.

f. Defendant also utilizes Styrofoam cups with larger diameter, colorful red straws and uses pebble ice, just like the Swig Cup. Defendant's cup also incorporates a logo similar to the Swig Logo Mark, utilizing Swig's red and blue color accents and Soda Bubbles.

25. Swig is informed and believes that these similarities are not accidental. To the contrary Swig is informed and believes the Defendant has copied Swig's entire business model and the Swig Marks to confuse consumers and to gain business at the expense of Swig.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
(15 U.S.C. §1114)

26. Swig repeats and incorporates by reference the allegations of the foregoing paragraphs.

27. Swig's registered Dirty Mark is inherently distinctive and/or has acquired secondary meaning as a result of Swig's extensive use, advertising, and sales across the United States for services offered under the Dirty Mark, long prior to Defendant's use.

28. Defendant's unauthorized use of the Dirty Mark is likely to cause confusion,

6

deception, and mistake by creating the false and misleading impression that Defendant's commercial activities, including its promotional activities and advertisements accessible through Defendant's stores, website, and other media content, are associated or connected with Swig, or have the sponsorship, endorsement, or approval of Swig.

29. Defendant is now using imitations of the Dirty Mark to conduct business and to sell identical goods and services to those offered by Swig under the Dirty Mark.

30. Defendant has used marks confusingly similar to Swig's federally-registered Dirty Mark in violation of 15 U.S.C. § 1114, and unless enjoined by this Court, Defendant's activities will cause a likelihood of confusion and deception of members of the public and, additionally, cause injury to Swig's goodwill and reputation as symbolized by its federally-registered Dirty mark, for which Swig has no adequate remedy at law.

31. Defendant's actions demonstrate an intentional, willful, and malicious intent to infringe Swig's federally-registered Dirty mark to Swig's great and irreparable injury.

32. Defendant is likely to cause substantial injury to the public and to Swig, and pursuant to 15 U.S.C. §§ 1114, 1116, and 1117, Swig is entitled to injunctive relief, costs, damages, and Defendant's profits.  In light of the egregious and exceptional nature of Defendant's conduct, Swig is further entitled to reasonable attorneys' fees, trebling of any damages award, and enhancement of any award of Defendant's profits.

## COUNT II
## FEDERAL UNFAIR COMPETITION
(15 U.S.C. §1125(a))

33. Swig repeats and incorporates by reference the allegations of the foregoing paragraphs.

34. The Swig Marks are inherently distinctive and/or have acquired secondary meaning as a result of Swig's extensive use, advertising, and sales across the United States of services offered under the Swig Marks, long prior to Defendant's use.

35. Defendant's unauthorized use of confusingly similar imitations of the Swig Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant is associated or connected with Swig, or has the sponsorship, endorsement, or approval of Swig.

36. Defendant has made and is making false representations, false descriptions, and false designations of origin in its use of the Swig Marks, in violation of 15 U.S.C. § 1125(a), and unless enjoined by this Court, defendant's activities will cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Swig's goodwill and reputation as symbolized by the Swig Marks, for which Swig has no adequate remedy at law.

37. Defendant's actions demonstrate an intentional, willful, and malicious intent to infringe the Swig Marks, to the great and irreparable injury of Swig.

38. Defendant's conduct is likely to cause substantial injury to the public and to Swig, and pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(a), Swig is entitled to injunctive relief, costs, damages, and Defendant's profits.  In light of the egregious and exceptional nature of Defendant's conduct, Swig is further entitled to reasonable attorneys' fees, trebling of any damages award, and enhancement of any award of Defendant's profits.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

39. Swig repeats and incorporates by reference the allegations of the foregoing paragraphs.

40. Defendant's unauthorized use of confusingly similar imitations of the Swig Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Defendant is associated or connected with Swig, or has the sponsorship, endorsement, or approval of Swig.

41. Defendant's conduct constitutes infringement of the common law rights of Swig that have damaged and will continue to damage Swig's goodwill and reputation to the irreparable injury thereof unless restrained by this Court.  Swig has no adequate remedy at law.

42. Defendant's actions violate the common law of Utah and have damaged and continue to damage Swig and the valuable Swig Marks, causing irreparable harm for which Swig has no adequate remedy at law.

43. Defendant's use of the Swig Marks, create a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods, and/or cause a likelihood of confusion or of misunderstanding as to the affiliation, connection, association with, or certification by, Swig.

## COUNT IV
## UNFAIR COMPETITION

44. Swig repeats and incorporates by reference the allegations of the foregoing paragraphs.

45. Swig is the owner of valuable trademark rights including the Swig Marks.

46. Swig is informed and believes Defendant has engaged in unlawful, unfair and/or fraudulent activities which have resulted in the material diminution in the value of Swig's intellectual property, including Swig's Marks.

47.     Pursuant to Utah Code Ann. § 13-5(a)-103, Swig is entitled to its actual damages, its costs and attorneys' fee and punitive damages.

## PRAYER FOR RELIEF

In view of the foregoing, Swig asks that this Court grant relief as follows:

1.      For judgment that Swig's federally registered Dirty Trademark has been infringed by Defendant in violation of 15 U.S.C. §§ 1114-1118.

2.      For judgment that Defendant has committed acts of unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), and/or acts of unfair competition under Utah common law and Utah Code Ann. §13-5(a)-103.

3.      For judgment that each of the Swig Marks has been infringed under the Lanham Act and Utah law.

4.      For Defendant, its officers, agents, servants, employees, successors, assigns and all other persons in active concert or participation with any of them, to be permanently enjoined from use of any designation as a trademark, trade dress, service mark, or otherwise to market, advertise, or identify Defendant or its goods and services that is confusing similar to any of the Swig Marks.

5.      For an accounting of Defendant's profits and an assessment of Swig's damages to compensate Swig for Defendant's infringement of the Swig Marks.

6.      For an award of the amount by which Defendant has been unjustly enriched by confused consumers who have purchased Defendant's products and services under the belief that they were purchasing Swig's products and services.

7. For an assessment of treble damages against Defendant due to the deliberate, willful and knowing nature of its infringement of the Swig Marks under 15 U.S.C. § 1117(b).

8. For an award to Swig of its reasonable attorneys' fees under 15 U.S.C. § 1117 and Utah Code Ann. § 13-5(a)-103.

9. For an award of punitive damages under Utah common law and Utah Code Ann. § 13-5a-103.

10. For an award to Swig of its costs in this action plus interest on all monetary damages awarded.

11. For such other and further relief as this Court deems just and fair.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Swig demands a trial by jury of all issues so triable.

DATED this 29th day of April, 2015.

RAY QUINNEY & NEBEKER P.C.


By:/s/ Mark M. Bettilyon
　　Mark M. Bettilyon
　　Mica McKinney

*Attorneys for Plaintiffs*

1316143