# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| SWIG HOLDINGS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>SODALICIOUS, INC., ET AL.,<br><br>                    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:15CV307DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendants Anna K. Findlay and Kent Findlay's Motion to Dismiss Plaintiff's Revised Third Amended Complaint with Prejudice [Docket No. 139] and Defendants Sodalicious, Inc., Anne Auernig, and Kevin Auernig's 12(b)(6) Motion to Dismiss Swig's Corrected Third Amended Complaint with Prejudice [Docket No. 144]. On August 24, 2017, the court held a hearing on the motions. At the hearing, Plaintiff Swig Holdings, LLC was represented by Mark M. Bettilyon and Nien-Ping Wang, the Findlay Defendants were represented by Randall B. Bateman, and Sodalicious and the Auernig Defendants were represented by Tessa Meyer Santiago and Leah Jordana Aston. The court took the motions under advisement. After carefully considering the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion, the court issues the following Memorandum Decision and Order.

**BACKGROUND**

The parties are competing flavored drink/treat stores. Swig opened in 2010 in St. George and became hugely popular. Swig has opened additional stores since then, and there are currently 12 locations in Utah. Swig is known for dirty drinks, which refers to adding coconut flavoring. But it also offers many other flavors and allows the customer to make any combination they want.

In 2013, Sodalicious opened a similar store in Provo also focusing on flavored drinks and treats. Alleging that Sodalicious copied its business model, Swig brought the present lawsuit asserting causes of action for (1) trademark infringement of Swig's "dirty" trademark; (2) infringement of Swig's state registered mark of its oval Swig logo; and (3) federal and state unfair competition claims alleging trade dress infringement for copying its business model. Swig's Third Amended Complaint dropped the trade dress claim because Sodalicious has made changes to its business and has stopped referring to drinks with flavorings as "dirty." However, Sodalicious still refers to drinks with half and half added to them as "extra dirty."

**The Findlay Defendants' Motion to Dismiss**

The Findlay Defendants move to dismiss Swig's Third Amended Complaint, arguing that (1) the complaint fails to allege any particular conduct by the Findlays, (2) the common law infringement claim is facially deficient, and (3) the trademark dilution claim fails because the mark is not famous. The Findlay Defendants ask the court to grant dismissal with prejudice and to deny leave to correct any of these alleged deficiencies because Swig has already filed three amended complaints.

Procedurally, Swig argues that the Findlays cannot assert a Rule 12(b)(6) defense against

claims that were previously part of Swig's Second Amended Complaint because they have already answered the Second Amended Complaint and, thus, waived their defenses. However, the motion is not procedurally improper because waiver "does not apply to defenses under Rules 12(b)(1), 12(b)(6), and 12(b)(7), which are exempted by Rule 12(g) from the consolidation requirement and are protected against waiver by Rules 12(h)(2) and 12(h)(3)." 5C Wright & Miller, Fed. Practice & Procedure § 1388 (4th ed. 2009). Moreover, a Rule 12(b)(6) motion brought after an answer can be treated as a Rule 12© motion for judgment on the pleadings.

### 1. Allegations of the Findlays' Conduct

The Findlay Defendants contend that there are no specific factual allegations against them in the Third Amended Complaint. Swig alleges that the individual defendants each have a financial interest in Sodalicious and its sales, are the sole owners and directors of Sodalicious, are responsible for Sodalicious' products and marketing, have the right and ability to supervise the business activities of Sodalicious, have personally participated in and directed Sodalicious' infringing activities, and have continued to direct Sodalicious to engage in infringing activity despite knowledge of Swig's mark and trade dress.

The Findlays Defendants contend that to satisfy the plausibility standard the complaint must make clear who is alleged to have done what to whom and to provide each individual defendant with notice as to the basis of the claims against him or her. *Robbins v. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). However, the *Robbins* case was a civil rights case against multiple government actors with vague allegations as to each actor's connection to the claims. The court was concerned about whether the defendants had notice of the claims against them. Such a case is largely irrelevant to the claims and allegations in the

present case. The individual defendants in this case have adequate notice of the claims against them.

The Findlays' argument that Swig must allege specific wrongful conduct by them to state a plausible claim also ignores the context of the underlying legal theory for their alleged personal liability. Courts recognize that "[a] corporate officer or director is, in general, personally liable for all torts which he [or she] authorizes or directs or in which he [or she] participates, notwithstanding that he [or she] acted as an agent of the corporation and not on his [or her] own behalf. *Comm. For Idaho's High Deseret, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Therefore, to state a plausible claim against the Findlays for trademark infringement, unfair competition, or dilution, Swig needs only to allege facts leading to a reasonable inference that they authorized or directed Sodalicious' tortious conduct. Swig has alleged such facts. The complaint's factual allegations explain the context of the alleged tort and the defendants' role with regard to the alleged tort. When the factual allegations are viewed in the light most favorable to Swig and all reasonable inference are drawn in Swig's favor, the Third Amended Complaint sufficiently alleges that the Findlays directed and authorized Sodalicious' alleged tortious conduct. Accordingly, the court finds no basis for dismissing the complaint on these grounds.

**2. Common Law Infringement Claim**

The Findlay Defendants argue that the court should dismiss Swig's common law infringement claim because Swig has not pled that the term "dirty" has acquired a secondary meaning. The elements of common law trademark infringement are that "a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the

likelihood of consumer confusion." *Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F. Supp. 2d 889, 895 (D. Utah Mar. 26, 2007).

The Findlay Defendants' motion only challenges whether Swig has a protectable interest in its mark. Their arguments, however, ignore the established fact that Swig has a federally registered trademark for the Dirty Mark. Under federal law, a registered mark is prima facie evidence of the mark's validity and the registrant's exclusive right to use the mark. 15 U.S.C. § 1115(a). Such prima facie evidence is sufficient to withstand a motion to dismiss at the initial pleading stage.

Even if the dirty mark was not registered, there is no basis for dismissing the cause of action based on a failure to plead a secondary meaning. Viewing the facts in a light most favorable to Swig, Swig's dirty mark is suggestive rather than descriptive and is protectable without demonstrating that it has acquired a secondary meaning. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004). "An unregistered suggestive mark, which has been used in commerce . . . is afforded protection under the common law similar to that provided to a registered mark under the Lanham Act." *Sports Imaging Photography of Utah, Inc. v. Utah Sch. & Sports Imaging*, 2007 U.S. Dist. LEXIS 88589, at *8-9 (D. Utah Nov. 1, 2007). " A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods." *Donchez*, 392 F.3d at 1216. Consumers must use some thought to conclude that "dirty" in the context of fountain sodas refers to a certain flavor additive. Swig's term "dirty" is not merely descriptive, such as flavored coke or coconut coke. As pled and giving all favorable inferences to Swig, Swig's dirty mark is suggestive and constitutes a protectable interest.

5

### 3. Trademark Dilution Claim

Under Utah's statute, a claim for trademark dilution may be made when the alleged infringement "begins after the mark has become famous." Utah Code Ann. § 70-3a-403. A mark is famous when it is essentially a household name. *See Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012). The Findlay Defendants argue that Swig makes no allegations adequately supporting that Swig's mark is famous.

Utah's trademark dilution statute follows the language of a 1992 model anti-dilution statute promoted by the then-United States Trademark Association. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:79 (4th ed. 2011). The language of this model statute ultimately became part of the 1996 federal anti-dilution law. *Id.* Under that law, some courts held that niche fame was possible. *See, e.g., Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 212 F.3d 157, 164 (3d Cir. 2000). The federal law, however, was amended in 2006 to define a famous mark as one widely recognized by the general consuming public of the United States. *See* Pub. L. No. 109-312, § 2, 120 State. 1730 (2006). Thus rejecting niche fame. *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 758 (N.D.N.Y. 2012). Utah's Legislature, however, has not adopted the language of the new law. Therefore, Utah's anti-dilution law can allow for both limited geographical fame and niche market fame.

In this case, Swig is alleging that the dirty mark is a famous mark in at least St. George, Utah and its surrounding counties and/or among the target demographic serviced by Swig and its competitors. Under Utah Code Ann. § 70-3a-403, whether a mark is famous depends on a set of non-exhaustive factors, including 1) the degree of inherent distinctiveness of the mark, (2) the duration and extent of use of the mark, (3) the geographical extent of the trading area in which

the mark is used, and (4) whether the mark is the subject of a federal registration.

Swig alleges that it opened its first store in 2010, operating for over three years before the Findlays opened Sodalicious in fall of 2013. The complaint references a blog post crediting Swig with starting the dirty soda phenomenon and a similar newspaper article detailing its popularity. The complaint also references Swig's social media presence. Viewing all facts in a light most favorable to Swig, these factual allegations are sufficient to state a claim that Swig's dirty drinks were famous in at least St. George and the surrounding counties and/or among the target demographic serviced by Swig and its competitors. The parties can conduct discovery and address the issue of "fame" more fully on summary judgment. The court finds no grounds for dismissing the claim as a matter of law at this stage of the litigation. Accordingly, the Findlay Defendants' motion to dismiss is denied.

## Sodalicious and The Auernigs' Motion to Dismiss

To the extent that Sodalicious and the Auernigs (collectively "Sodalicious") assert the same grounds for dismissal as the Findlay Defendants, the court's above analysis applies. The court, therefore, will only address arguments in Sodalicious' motion that are unique to its motion.

Sodalicious seeks dismissal of Swig's federal trademark infringement claim under the doctrine of claim prosecution estoppel, arguing that Swig relinquished all claims to trademark protection for uses of the word dirty that reference coconut, fruits, syrups and any other food ingredients that are added to soda to flavor it. Swig admits that, in response to the USPTO's initial denial of Swig's intent to use application, Swig amended its application. However, the parties significantly dispute the effect of Swig's amendment. While Sodalicious claims that Swig's application essentially disclaimed the products Swig currently sells, Swig argues that the

7

application was narrowed to apply more appropriately to soda pop and carbonated beverages. The parties' dispute over the amendment raises a fact issue that cannot be resolved by the court on a motion to dismiss. Moreover, Sodalicious has not cited a case expanding the application of prosecution history estoppel beyond arguments made to the USPTO to include amendments made to the goods and services covered by the application and this court is unwilling to do so. Therefore, the court finds no grounds for dismissing Swig's federal trademark infringement claim based on the doctrine of claim prosecution estoppel

Next, Sodalicious seeks dismissal of Swig's federal trademark infringement claim and Lanham Act unfair competition claim for failing to plead the interstate commerce jurisdictional requirement. A defendant is liable under the Lanham Act when it uses without authority a plaintiff's mark "in commerce" in connection with the sales, advertising, or distribution of goods or services. 15 U.S.C. §§ 1114(a), 1125(a). The Lanham Act defines commerce as "all commerce which may be lawfully regulated by Congress." *Id.* § 1127. The Tenth Circuit has not interpreted "in commerce" under the Lanham Act, but other courts have held that infringing conduct can be intrastate as long as it has a substantial economic effect on interstate commerce. *Coca-Cola Co. v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980); *World Carpets, Inc. v. Dick Litrell's New World Carpets*, 438 F.2d 482, 488-89 (5th Cir. 1971). Courts have also held that a defendant's use of a mark in a single location may be deemed to have had a substantial effect on interstate commerce. *Coca-Cola*, 621 F.2d at 291.

Sodalicious argues that Swig did not allege or plead any facts that indicate that Swig placed its dirty mark in interstate commerce and that Sodalicious used allegedly infringing marks in interstate commerce. However, in the Third Amended Complaint, Swig alleges that

Sodalicious has numerous store locations throughout Utah and Arizona and Sodalicious uses the infringing marks at the stores in both states. In addition, Swig alleges in the Third Amended Complaint that Swig was founded in St. George near the Utah/Arizona border, Swig's popularity resulted in it becoming a destination for many visitors to Utah, and Swig has a customer base spread throughout Utah and much of the Western United States. These allegations, when viewed in the light most favorable to Swig and drawing all inferences in its favor, are sufficient to show a plausible use of the infringing mark in interstate commerce. Therefore, the court concludes there are no grounds for dismissing Swig's federal trademark claim on interstate commerce grounds.

In addition, Sodalicious argues that Swig's unfair competition claim should be dismissed. Under Utah's Unfair Competition Act, "[u]nfair competition is defined . . . as 'an intentional business act or practice that . . . is unlawful, unfair, or fraudulent; and . . . leads to a material diminution in value of intellectual property." *Rich Media Club LLC v. Mentchoukov*, 2012 U.S. Dist. LEXIS 48498, at *11 (D. Utah Apr. 3, 2012) (unpublished) (quoting Utah Code Ann. § 13-5a-102(4)(a)). Sodalicious first argues that Swig did not plead fraudulent activities, which is true. But that is irrelevant because Swig pled unlawful and unfair acts relating to trademark infringement. Sodalicious also argues that Swig failed to plead diminution in value of Swig's mark. However, Swig alleged that Sodalicious' use of the dirty caused confusion as to the meaning of dirty in the soda flavor market. Swig also pleaded that Sodalicious' use of "extra dirty" to describe the addition of half & half has lessened the ability of the consumers to identify and distinguish the flavor shot used in Swig's dirty sodas. These are sufficient allegations at the pleading stage to maintain an unfair competition claim.

9

Furthermore, Sodalicious also argues that Swig's trade dress claims and allegations should be stricken. However, Swig has dropped the trade dress claim and the issue is largely moot. To the extent that the Third Amended Complaint has allegations that Sodalicious copied Swig's business model and trade dress in the past, Sodalicious has failed to establish that the allegations are redundant, immaterial, impertinent, or scandalous. These allegations provide relevant context for Swig's trademark infringement and unfair competition claims and could be relevant to the issue of willful infringement. Sodalicious similarly fails to establish how the Third Amendment Complaint's descriptions of Swig's products, social media presence, and the distinctiveness of the dirty mark are redundant, immaterial, impertinent, or scandalous. Because these allegations are relevant to Swig's claims in this case, the court concludes that there are no grounds to strike these allegations. Accordingly, the court denies Sodalicious' motion to strike.

## CONCLUSION

Based on the above reasoning, the Findlay Defendants' motion to dismiss [Docket No. 139] is DENIED and Sodalicious and the Auernig's motion to dismiss [Docket No. 144] is DENIED.

DATED this 8th day of September, 2017.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE